IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAYNA S.,[1] | : | Case No. 3:21-cv-00326 |
| Plaintiff, | : : | Magistrate Judge Caroline H. Gentry |
| vs. | : : | (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

**DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in May 2019. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 7).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since May 5, 2016.[2] At that time, she was forty-five years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has " high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Administrative Record, ECF No. 7-2, PageID 39-49), Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), and Plaintiff's Reply (ECF No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

---

[2] Plaintiff initially alleged disability beginning May 5, 2014. (Administrative Record, ECF No. 7-5, PageID 292.) At the ALJ hearing, Plaintiff amended her alleged disability onset date to May 5, 2016. (Administrative Record, ECF No. 7-2, PageID 61.)

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

2

impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

**IV.     FACTS**

    **A.     The ALJ's Findings of Fact**

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

> Step 1:     Plaintiff has not engaged in substantial gainful activity since May 5, 2016, the amended alleged onset date.
>
> Step 2:     She has the severe impairments of anxiety disorder; bipolar disorder; degenerative disc disease of the lumbar spine, status-post fusion; osteoarthritis of the right hip; and obesity.

> Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: Her residual functional capacity (RFC), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 CFR § 404.1567(b) subject to the following limitations: "she can frequently climb, stoop, crouch, or balance; she can occasionally kneel or crawl; she can never use ladders, ropes, or scaffolds; she can frequently use foot controls with the right lower extremity; she must avoid dangerous moving machinery and unprotected heights, but she is capable of avoiding ordinary workplace hazards; she is limited to simple, routine, and repetitive tasks that require little judgment and can be learned by short demonstration; she cannot perform team work or have a fixed-pace hourly production rate; she is limited to brief and superficial interaction with co-workers, supervisors, and the general public; and she is limited to simple decision-making with occasional changes."
>
> She is unable to perform any of her past relevant work.
>
> Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Administrative Record, ECF No. 7-2, PageID 41-49.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 49.)

    **B.**    **Consultative Psychologist Katherine Myers, Psy.D.**

Katherine Myers, Psy.D. performed a consultative psychological evaluation in November 2019. (Administrative Record, ECF No. 7-7, PageID 507-12.) According to Dr. Myers, Plaintiff's clinical signs and reported symptoms supported diagnoses of an unspecified anxiety disorder with panic attacks, an unspecified bipolar and related disorder, and an unspecified cannabis-related disorder. (*Id.* at PageID 511.) In the

5

Functional Assessment section of her report, Dr. Myers concluded that Plaintiff presented with intellectual capacities that were "consistent with functioning in the low average range." (*Id.*) She opined that Plaintiff would likely have "some difficulties with job-related tasks" but could likely perform simple and repetitive tasks. (*Id.*) However, in the area of maintaining attention, concentration, persistence, and pace, Dr. Myers reported that Plaintiff was only "fleetingly able" to concentrate on questions and tasks. (*Id.*) Dr. Myers opined that Plaintiff would exhibit a slower pace than her peers on tasks requiring rapid time performance, and that she was "likely to show a pattern of periods of time away from work due to her current mental health difficulties." (*Id.*)

With respect to social functioning, Dr. Myers reported that Plaintiff's interaction during the evaluation was adequate "although she was noticeably fidgety and tense." (Administrative Record, ECF No. 7-7, PageID 511.) Plaintiff described having difficulty interacting with others and maintaining appropriate boundaries with others. (*Id.*) Dr. Myers opined that Plaintiff "may be prone to irritable interactions with others in a work setting." (*Id.* at PageID 511-12.) In the final area of responding to work pressures, Dr. Myers concluded that Plaintiff was experiencing "some significant stressors" and had "rather limited social support." (*Id.* at PageID 512.) Dr. Myers acknowledged Plaintiff's reports of having difficulty leaving the house when she was alone, and concluded that Plaintiff's overall stress tolerance level appeared poor. (*Id.*) Dr. Myers opined that Plaintiff was "only somewhat able to respond appropriately to work stressors and to situations." (*Id.*)

The ALJ referenced some portions of Dr. Myers' report in the Step 3 analysis. (Administrative Record, ECF No. 7-2, PageID 42-43.) In the opinion evaluation section of the RFC analysis, the ALJ concluded that Dr. Myers' opinion was "somewhat persuasive." (Administrative Record, ECF No. 7-2, PageID 47.) The ALJ explained:

> The medical opinion from Dr. Myers is somewhat persuasive to the extent it is consistent with and supported by her objective examination findings, but the only records available to her at that time consisted of the paperwork completed by Ms. Dickman in September 2019 and the subsequent assessments from Drs. Prout and Richardson are more persuasive because they had the benefit of considering her longitudinal treatment reports as well (1A, 2A, 6A, 8A, and 5F).

(*Id.*)

### C. State Agency Psychological Consultants

State agency psychological consultant Maurice Prout, Ph.D. reviewed the record and completed a mental RFC assessment in December 2019. (Administrative Record, ECF No. 7-3, PageID 94-95, 99-101.) Dr. Prout opined that Plaintiff was mildly impaired in the "paragraph B" area of understanding, remembering, or applying information and that she was moderately impaired in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (*Id.* at PageID 94-95.) Dr. Prout opined that Plaintiff could understand, remember, and sustain tasks that could be "learned after a short demonstration." (*Id.* at PageID 99-100.) Dr. Prout further opined that Plaintiff was limited to occasional social interactions in situations "that do not require resolving conflicts or persuading others to follow demands." (*Id.* at PageID 100.) Finally, Dr. Prout opined that Plaintiff "would perform best in a static work environment without strict production standards." (*Id.*) Deryck Richardson, Ph.D. reviewed the

7

updated record at the reconsideration level in June 2020. (*Id.* at PageID 127-30, 132-33.) Dr. Richardson affirmed Dr. Prout's assessment. (*Id.*)

The ALJ found that the State agency psychological consultants' findings were "mostly persuasive." (Administrative Record, ECF No. 7-2, PageID 46-47.) According to the ALJ, the consultants' findings were "generally consistent with and supported by the overall evidence of record." (*Id.* at PageID 47.)

### D.     Dawn Dickman, S.W.T.

Dawn Dickman. S.W.T. completed a mental capacities assessment form in September 2019. (Administrative Record, ECF No. 7-7, PageID 496-98.) According to Ms. Dickman, she was treating Plaintiff for a generalized anxiety disorder. (*Id.* at PageID 498.) Ms. Dickman offered her opinion that Plaintiff experienced marked to extreme impairment in the following abilities: sequencing multi-step activities; working at an appropriate and consistent pace, or completing tasks in a timely manner; ignoring or avoiding distractions while working; working close to or with others without interrupting or distracting them; working a full day without needing more than the allotted number of length of rest periods; adapting to changes; managing psychologically-based symptoms; making plans independently of others; cooperating with others or asking for help when needed; handling conflicts with others; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness. (*Id.* at PageID 496-98.) Ms. Dickman indicated that Plaintiff experienced no more than moderate impairment in the other areas of work-related functioning identified on the form. (*Id.*) She also noted that Plaintiff did "not have the ability to control the use of alcohol or other substances," and

that Plaintiff reported a "current addiction" to an over-the-counter pain medication and a sleep aid. (*Id.* at PageID 498.)

Additionally, Ms. Dickman provided a narrative letter in September 2019. (Administrative Record, ECF No. 7-7, PageID 501.) Ms. Dickman reported that she had seen Plaintiff for twenty-one psychotherapy sessions since February 2019. (*Id.*) According to Ms. Dickman, Plaintiff reported a low tolerance for minimal stress associated with social interactions, which she said hindered her ability to work and travel outside of her home. (*Id.*) Joanna White, M.S.W., L.I.S.W. cosigned the letter. (*Id.*)

Ms. Dickman completed another mental capacities assessment form in October 2020. (Administrative Record, ECF No. 7-9, PageID 797-99.) Ms. Dickman offered a similar opinion to the September 2019 form: she again found marked to extreme limitations in several areas of work-related mental functioning. (*Id.*) Ms. Dickman explained that she was treating Plaintiff for a generalized anxiety disorder, and that Plaintiff presented with mild symptoms of social anxiety. (*Id.* at PageID 799.) Ms. Dickman again referenced Plaintiff's reports of an addiction to sleep aids, and she noted that Plaintiff reported being "unable to control [the] use of some prescription medications unless the direction are written in an explicit manner." (*Id.*) In an accompanying letter, Ms. Dickman reported that she had seen Plaintiff for fifty-seven weekly psychotherapy sessions since February 2019. (*Id.* at PageID 800.) Ms. Dickman reiterated Plaintiff's reports of anxiety symptoms that impaired her ability to work, as well as a "low tolerance for work-related and social interactions and/or stress, and stress associated with her

9

physical well-being, thus hindering her ability to work outside of her home." (*Id.*) This letter was also co-signed by Joanna White, M.S.W., L.I.S.W. (*Id.*)

The ALJ summarized these reports in the section of the RFC analysis that discussed the medical evidence. (Administrative Record, ECF No. 7-2, PageID 45-46.) The ALJ concluded that the assessments from Ms. Dickman and Ms. White were unpersuasive "because they are not consistent with or supported by the overall medical and clinical findings, which document no more than mild to moderate mental functioning deficits on a sustained basis (3F, 4F, 10F, and 11F)." (*Id.* at PageID 47.)

## V. LAW AND ANALYSIS

Plaintiff asserts that the ALJ's decision is unsupported by substantial evidence because the ALJ "failed to offer a legally sufficient analysis of the mental health opinion evidence." (Statement of Specific Errors, ECF No. 10, PageID 823.) Plaintiff specifically challenges the ALJ's evaluation of Dr. Myers' opinion and the State agency psychological consultants' findings. (*Id.* at PageID 831-32.) Finding error in the ALJ's analysis of the opinion of consultative psychologist Dr. Myers, the Court does not address Plaintiff's other alleged errors and, instead, instructs the ALJ to address all of them on remand.

### A. Evaluation of Medical Opinions

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her]

10

impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[4] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from

---

[4] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

11

other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### B. The ALJ Reversibly Erred When Analyzing Dr. Myers' Opinion

The Court concludes that the ALJ erred because her findings regarding the supportability and consistency of Dr. Myers' opinion are not supported by substantial evidence. Therefore, the Court reverses and remands the ALJ's decision.

The ALJ's findings regarding the supportability factor are not supported by substantial evidence. As described above, Dr. Myers provided a detailed summary of Plaintiff's subjective complaints, her observations of Plaintiff, and the objective findings that she documented during the mental status examinations. (Administrative Record, ECF No. 7-7, PageID 507-11.) The ALJ made a cursory reference to supportability when she stated that Dr. Myers' opinion is "somewhat persuasive to the extent it is consistent with and supported by her objective examination findings . . . ." (Administrative Record, ECF No. 7-2, PageID 47.) But the ALJ did not explain which portions of Dr. Myers' opinion, if any, were unsupported. (*Id.*) This failure is significant because Dr. Myers' opinion is more restrictive than the ALJ's RFC: Dr. Myers opined that Plaintiff was only "fleetingly able" to concentrate on questions and tasks, was likely to "show a pattern of periods of time away from work due to her current mental health difficulties," had a poor stress tolerance level, and was "only somewhat able to respond appropriately to work stressors and to situations." (Administrative Record, ECF No. 7-7, PageID 511-12.) The ALJ did not explain why these portions of Dr. Myers' opinion were not included in the RFC. (Administrative Record, ECF No. 7-2, PageID 47.) The only explanation given by the

12

ALJ—that Dr. Myers did not have the benefit of reviewing certain longitudinal evidence from other sources—relates to the consistency factor, not the supportability factor.[5] The absence of a meaningful supportability analysis constitutes reversible error.

The ALJ's findings regarding the consistency factor are also unsupported by substantial evidence. As explained above, Dr. Myers provided a detailed summary of Plaintiff's subjective complaints, her observations of Plaintiff, and the findings that she documented during the mental status examination. (Administrative Record, ECF No. 7-7, PageID 507-11.) Dr. Myers referenced these findings when she provided her opinions in the Functional Assessment section of her report. (*Id.* at PageID 511-12.) The ALJ did not explain what evidence in the record was inconsistent with the evidence relied upon by Dr. Myers. (Administrative Record, ECF No. 7-2, PageID 47.) Instead, the ALJ found the State agency psychological consultants' assessments more persuasive because "they had the benefit of considering [Plaintiff's] longitudinal treatment reports as well." (*Id.*) The ALJ did not cite to any other evidence when analyzing the consistency factor. (*Id.*)

Notably, the ALJ did not explain what evidence in the "longitudinal treatment reports" was inconsistent with Dr. Myers' opinion. In fact, the record contains no evidence that the State agency consultants actually considered any evidence that Dr. Myers did not review. In the initial Disability Determination Explanation (DDE) report, psychological consultant Dr. Prout indicated that he reviewed Dr. Myers' report and the

---

[5] The supportability factor requires consideration of the "objective medical evidence and supporting explanations *presented by a medical source* . . . ." 20 C.F.R. § 404.1520c(c)(1) (emphasis added). By contrast, "consistency" involves comparing a medical opinion or prior administrative medical finding with "*the evidence from other medical sources and nonmedical sources* in the claim." 20 C.F.R. § 404.1520c(c)(2) (emphasis added). The ALJ appears to have conflated these terms.

13

paperwork from Ms. Dickman. (Administrative Record, ECF No. 7-3, PageID 86-101.) Although the initial DDE report summarized several progress notes from Bellbrook Family Practice, those summaries primarily related to Plaintiff's physical condition, with only one reference to normal mental status findings from a July 2019 visit. (*Id.*) The reconsideration-level DDE report described only one additional visit to Bellbrook Family Practice in January 2020, and this summary similarly related to Plaintiff's physical condition, not her mental condition. (*Compare* Administrative Record, ECF No. 7-3, PageID 93-97, *with* PageID 126-30.)

The underlying evidence reviewed by the State agency consultants (i.e., the Bellbrook Family Practice records dated between June 2016 and September 2020) do document numerous mental status examinations and findings. Some of the mental status examinations are normal, with findings of a normal mood and affect, good insight and judgment, full orientation, and normal recent and remote memory. (*E.g.,* Administrative Record, ECF Nos. 7-7, PageID 451, 455, 458, 461, 464, 468, 471-72, 474-75; 7-8, PageID 589, 623, 626; 7-9, PageID 768, 771-72, 776, 779-80.) Plaintiff's providers also documented abnormalities—such as anxious and/or depressed moods and an abnormal affect—on several occasions. (*Id.*) Significantly, the notes show that Plaintiff consistently complained of symptoms associated with depression and anxiety, including panic attacks, weight gain, sleep disturbances, palpitations, trembling, and social anxiety, to the point where she was afraid to leave her home. (*E.g.,* Administrative Record, ECF No. 7-7, PageID 451, 455, 458, 461, 464, 468, 471-72, 474-75; ECF No. 7-8, PageID 589, 623, 626; ECF No. 7-9, PageID 768, 771-72, 776, 779-80.)

14

The salient point, however, is that the State agency psychological consultants did not acknowledge or address this evidence in their assessments or reports. (Administrative Record, ECF No. 7-3, PageID 94-101, 127-33.) The record therefore does not show that the consultants reviewed or considered any longitudinal treatment reports or mental health records—other than the reports from Dr. Flexman and Ms. Dickson—when they made their assessments. Therefore, the ALJ's explanation that the psychological consultants' assessments were more persuasive "because they had the benefit of considering her longitudinal treatment reports" is unsupported by substantial evidence.

The ALJ also failed to consider the consistency of Dr. Myers' opinion with Ms. Dickman's opinions. As discussed above, Ms. Dickman found marked to extreme limitation in several work-related mental abilities. (Administrative Record, ECF No. 7-7, PageID 496-98.) Ms. Dickman's assessment appears to be consistent with Dr. Myers' opinion that Plaintiff was only "fleetingly able" to concentrate on questions and tasks, was likely to "show a pattern of periods of time away from work due to her current mental health difficulties," had a poor stress tolerance level, and was "only somewhat able to respond appropriately to work stressors and to situations." (*Id.* at PageID 511-12.) Yet in the analysis of Dr. Myers' opinion, the ALJ merely acknowledged that Dr. Myers reviewed the paperwork completed by Ms. Dickman in September 2019. (*Id.* at PageID 47.) The ALJ did not consider the consistency of Dr. Myers' opinion when compared to Ms. Dickman's opinion. (*Id.*) For this reason, too, the ALJ's consistency analysis is unsupported by substantial evidence. Accordingly, the ALJ erred in her analysis of Dr. Myers' opinion, and reversal is warranted.

15

**VI.   REMAND**

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the mental health opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 10) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4. This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5. This case is terminated on the Court's docket.


*s/Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge